# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **LANCE DAVIS,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | |
| **BRETT STIDHAM; ALEJANDRA** | § | **EP-24-CV-00105-DCG** |
| **NAJERA; FRANKIE GRAY; DR.** | § | |
| **DIONEL WATERS; DR. ERNESTO** | § | |
| **CANTU; DR. JEFFREY COTTRILL;** | § | |
| **UNIDENTIFIED IDEA EMPLOYEE 1;** | § | |
| **and UNIDENTIFIED IDEA** | § | |
| **EMPLOYEE 2,** | § | |
| | § | |
| *Defendants.* | § | |

## ORDER AND REPORT AND RECOMMENDATION

Before the Court are several motions referred to the undersigned Magistrate Judge by Senior United States District Judge David C. Guaderrama, pursuant to 28 U.S.C. § 636(b)(1) and Rule 1 of Appendix C to the Local Rules.  Order Ref'ing Mots. U.S. Mag. J, ECF No. 108; Order Ref'ing Mots. U.S. Mag. J, ECF No. 119.  For the reasons set forth below, the Court:

1. **RECOMMENDS** "Defendant Alejandra Najera's Rule 12(b)(6) Motion to Dismiss," ECF No. 25 [hereinafter "Najera Mot. Dismiss"], be **GRANTED IN PART, DENIED IN PART,** and **DENIED AS MOOT IN PART**;

2. **RECOMMENDS** "Defendant Ernesto Cantu's Rule 12(b)(6) and Rule 21 Motion to Dismiss," ECF No. 27 [hereinafter "Cantu Mot. Dismiss"], be **GRANTED IN PART** and **DENIED AS MOOT IN PART**;

3. **RECOMMENDS** "Defendant Jeffrey Cottrill's Rule 12(b)(6) Motion to Dismiss," ECF No. 28 [hereinafter "Cottrill Mot. Dismiss"], be **GRANTED IN PART** and **DENIED AS MOOT IN PART**;

4. **RECOMMENDS** the "Rule 12(b)(6) Motion to Dismiss Filed by Defendants Mr. Frankie Gray and Dr. Dionel Waters," ECF No. 30 [hereinafter "Gray & Waters Mot. Dismiss"], be **GRANTED IN PART** and **DENIED AS MOOT IN PART**;

5. **RECOMMENDS** Defendant "Brett Stidham's Rule 12(b)(6) Motion to Dismiss," ECF No. 32 [hereinafter "Stidham Mot. Dismiss"], be **GRANTED IN PART** and **DENIED AS MOOT IN PART**;

6. **ORDERS** Plaintiff Lance Davis's "Motion for Leave to Amend," ECF No. 68 [hereinafter "Aug. 2024 Mot. Amend"], filed August 30, 2024 be **STRICKEN**;

7. **ORDERS** Plaintiff Lance Davis's "Motion to Withdraw Pending Motion for Leave to Amend," ECF No. 98 [hereinafter "Dec. 2025 Mot. Withdraw"], filed December 17, 2025, is **GRANTED**;

8. **ORDERS** Plaintiffs Lance and Journey Davis's "Opposed Motion for Leave to File Second Amended Complaint," ECF No. 99 [hereinafter "Dec. 2025 Mot. Amend"], filed December 17, 2025, is **DENIED**;

9. **ORDERS** Plaintiffs Lance and Journey Davis's "Motion to Substitute Proposed Amended Complaint Attached to ECF No. 99," ECF No. 102 [hereinafter "Jan. 2026 Mot. Sub."], filed January 7, 2026, is **DENIED**;

10. **ORDERS** Plaintiffs Lance and Journey Davis's "Second Opposed Motion for Leave to File Supplemental Exhibit in Support of Second Amended Complaint Attached to ECF No. 99," ECF No. 106 [hereinafter "Jan. 2026 Mot. Suppl."], filed January 20, 2026, is **DENIED**;

11. **ORDERS** Plaintiffs Lance and Journey Davis's "Notice and Motion for Judicial Notice of Corporate Status Evidence and Short Brief on Clark Factors (Eleventh Amendment)," ECF No. 116 [hereinafter "Mot. Jud. Notice"], is **GRANTED IN PART** and **DENIED IN PART**;

## I.     BACKGROUND

On April 1, 2024, Plaintiff Lance Davis ("Lance") initiated this action on behalf of himself and his three children – later identified as Journey Davis ("Journey"), L.D., and L.J.  *See* Compl., ECF No. 1; Dec. 2025 Mot. Amend 7–8.  In the operative Amended Complaint, ECF No. 14, Plaintiffs[1] advance claims against several IDEA Public Schools ("IDEA") employees – including

---

[1]     For purposes of this Order and Report and Recommendation, the term "Plaintiffs" refers solely to Lance and Journey, as L.D. and L.J. have never been named as Plaintiffs in this action.

2

Alejandra Najera ("Najera"), Dr. Ernesto Cantu ("Cantu"), Jeff Cottrill ("Cottrill"), Frankie Gray "Gray"), Dr. Dionel C. Waters ("Waters"), and Brett Stidham ("Stidham") (collectively, "Movants") – under 42 U.S.C. §1983. Specifically, the Amended Complaint set forth allegations to support: (1) a Fourth Amendment claim stemming from a search of the children by IDEA employees; (2) a First Amendment claim arising from Najera's issuance of a No-Trespass Notice prohibiting Lance from entering IDEA's El Paso campuses; and (3) a Fourteenth Amendment claim tied to Najera's refusal to afford him an appeals process by which to challenge the issuance of the No-Trespass Notice. Amend. Compl. 3, 5–6.

Movants subsequently filed motions to dismiss the claims asserted against them. *See* Najera Mot. Dismiss; Cantu Mot. Dismiss; Cottrill Mot. Dismiss; Gray & Waters Mot. Dismiss; Stidham Mot. Dismiss (collectively, "Motions to Dismiss"). While those motions remained pending, Plaintiffs filed two motions seeking leave to file a second amended complaint. Aug. 2024 Mot. Amend; Dec. 2025 Mot. Amend (collectively, "Motions to Amend"). During this period, Plaintiffs also filed several motions and requests for relief relating to the Motions to Amend. *See* Dec. 2025 Mot. Withdraw; Jan. 2026 Mot. Sub.; Jan. 2026 Mot. Suppl.; Mot. Jud. Notice; Next Friend Decl., ECF No. 121.

Since this action was filed, Journey has reached the age of majority and filed a notice to appear *pro se*. Notice Appear., ECF No. 97. However, Lance's two younger children, L.D. and L.J., remain minors. *See* Next Friend Decl. On April 23, 2026, this Court advised Lance that the claims he brought on behalf of his minor children were subject to dismissal, given his status as a non-lawyer who had not otherwise "met his burden to prove he should be permitted to plead and conduct his children's case *pro se*," as required by 28 U.S.C. § 1654. Order on Pl. Lance Davis's "Next Friend Decl." 6, ECF No. 141 [hereinafter "Order Next Friend Decl."]. The Court therefore

3

granted Lance a fourteen-day stay of the minors' claims to allow him additional time to recruit counsel, cautioning "that failure to obtain representation for the minors by the expiration of that fourteen-day period may result in dismissal of the minors' claims." *Id.* 8.

## II.    LEGAL STANDARD

### A.  Motions to Amend Pleadings

Federal Rule of Civil Procedure 15(a) – which mandates that leave be "freely" granted when justice requires – "evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quoting *Lyn–Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002)).    Even still, entitlement to such leave is "by no means automatic." *Id.* (quoting *Halbert v. City of Sherman*, 33 F.3d 526, 529 (5th Cir. 1994)).    A court may refuse to grant leave to amend a complaint where it finds that there is a "substantial reason" to deny the request.    *See id.* (quoting *Lyn–Lea Travel Corp.*, 283 F.3d at 286).    In deciding whether a substantial reason for denial exists, a district court may consider several factors, including futility of amendment.    *Id.* (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)).    Amendment is futile where the claim, as amended, would not survive dismissal.    *See Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) (citing *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 208 (5th Cir. 2009)).

### B.  Dismissal for Failure to State a Claim

To survive dismissal for failure to state a claim, a complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 507 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).    It must also "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)).  A claim is plausible where the facts alleged by plaintiff "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

When reviewing whether dismissal for failure to state a claim is proper, a court must accept "all well-pleaded facts as true and must consider those facts in the light most favorable to the plaintiff."  *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018) (citing *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007)).  However, while a complaint "does not need detailed factual allegations," it must present "more than labels and conclusions" to withstand dismissal.  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (further citation omitted). "[A] formulaic recitation of the elements of a cause of action will not do."  *Id.*  And in determining whether a claim has been adequately pleaded, "courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint," as well as any matters of which they may take judicial notice.  *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996) (citing Fed. R. Evid. 201(f) ("Judicial notice may be taken at any stage of the proceeding.").

### C.  Dismissal for Lack of Standing

"Federal courts have no jurisdiction," and thus must order dismissal under Federal Rule of Civil Procedure 12(h)(3), "unless a case or controversy is presented by a party with standing to litigate."  *Taylor ex rel. Gordon v. Livingston*, 421 F. App'x 473, 474 (5th Cir. 2011) (quoting *Nevares v. San Marcos Consol. Ind. Sch. Dist.*, 111 F.3d 25, 26 (5th Cir. 1997)).  Standing exists only where the plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555,

560–61 (1992); *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly ... allege facts demonstrating'" each of these elements to withstand dismissal under Rule 12(h)(3). *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

### D. Dismissal with Prejudice

A district court generally errs in dismissing a *pro se* complaint with prejudice when it does so without giving the plaintiff an opportunity to amend. *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (citing *Moawad v. Childs*, 673 F.2d 850, 851–52 (5th Cir. 1982)). However, dismissal with prejudice may be considered appropriate where the court determines the litigant has already pleaded his "best case," or where amendment would be futile. *Wiggins v. La. State Univ.-Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (quoting *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009). Alternatively, even if the court does not conclude that the plaintiff has pleaded their best case or that amendment would be futile, it may still dismiss the case without granting leave to amend, provided the dismissal is without prejudice. *Bazrowx*, 136 F.3d at 1054-55 (citing *Moawad*, 673 F.2d at 851–52).

A plaintiff is understood to have pleaded his best case when he is granted leave to amend his complaint, after being "apprised of [its] insufficienc[ies]." *Wiggins*, 710 F. App'x at 627 (quoting *Dark v. Potter*, 293 F'Appx. 254, 257 (5th Cir. 2008) (per curiam)). "The opportunity to amend, however, is not a strict predicate to dismissing pro se complaints." *Dark*, 293 F. App'x at 257. A plaintiff may also be found to have pleaded his best case where, after being made aware of a complaint's potential insufficiency, he responds either by filing a submission declaring the adequacy of the pleading or by offering additional facts that nonetheless fail to cure those deficiencies. *Id.* at 257–58; *see also Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986).

## III.    DISCUSSION

### A.  The Court recommends the claims brought on behalf of L.D. and L.J. be dismissed without prejudice.

On April 23, 2026, the Court granted a fourteen-day stay of L.D. and L.J.'s claims to permit Lance to obtain counsel on the children's behalf.  Order Next Friend Decl.  8.  In doing so, the Court advised him that failure to retain counsel within that period could result in dismissal of the minors' claims.  Order Next Friend Decl.  8.  This fourteen-day period has elapsed, and Lance has neither informed the Court that counsel has been obtained nor has an attorney filed a notice to appear on behalf of L.D. and L.J.  Accordingly, "[d]ismissal without prejudice [i]s the proper disposition of [the minors'] claims."  *See Dobbs v. Warden*, No. 21-10657, 2022 WL 4244283, at *4 (5th Cir. Sept. 15, 2022), *abrogated on other grounds by Raskin ex rel. JD v. Dall. Indep. Sch. Dist.,* 69 F.4th 280 (5th Cir. 2023) (citing *OseiAfriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 883 (3d Cir. 1991)).

The Court therefore recommends the claims brought on behalf of the minors be dismissed without prejudice.[2]

### B.  The Motion for Judicial Notice is granted in part and denied in part.

---

[2]    Lance objects to dismissal, arguing that such a ruling would "effectively ensure[] that the minor Plaintiffs' Fourth Amendment claims will never be adjudicated on their merits."  Next Friend Ruling R. 72(a) Objs. 3, ECF No. 143.  The Court disagrees.  Given their age, the limitations periods on the minors' claims are tolled until they can assert the claims themselves upon reaching the age of majority.  *See Helton v. Clements*, 832 F.2d 332, 334 (5th Cir. 1987) (where Texas acts as the forum state, civil rights actions brought under Section 1983 "are deemed analogous to Texas tort actions," and therefore, governed by Texas Civil Practice and Remedies Code); Tex. Civ. Prac. & Rem. Code § 16.001 (minors' tort claims are tolled until they reach age eighteen).  Moreover, if the minors seek a more expeditious resolution of their claims, the Court's dismissal without prejudice preserves their ability to re-file their requests for relief upon retaining counsel.  *See Dobbs*, 2022 WL 4244283, at *4 (holding that, where claims brought by *pro se* parent on behalf of minor child were dismissed for failing to comply with § 1654, "[t]he district court's dismissal without prejudice does not foreclose a subsequent suit filed by an attorney.").  Accordingly, the Court is not persuaded that the unrepresented claims should remain pending and continue to burden judicial and party resources while the minors wait to attain the age of majority or continue their efforts to obtain counsel.

In their Motion for Judicial Notice, Plaintiffs request that the Court take judicial notice of IDEA's status as "a private Texas Domestic Nonprofit Corporation 'in existence,' and an IRS-recognized 501(c)(3) K–12 nonprofit." Mot. Jud. Notice 1. Plaintiffs further request that Defendants be ordered "to stipulate within seven (7) days whether any portion of a judgment would be paid by the Texas State treasury and whether IDEA maintains liability insurance responding to these claims; or grant leave for two [requests for admission] and one [request for production] limited to declarations/ACORD certificates." *Id.* at 2.

On its own or upon a party's request, a court may take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2), (c). The Court's review of the Texas Secretary of State website indicates IDEA is registered as a "Domestic Nonprofit Corporation" currently "[i]n existence." IDEA's public tax filings further demonstrate that IDEA has claimed tax-exempt status as a 501(c)(3) nonprofit corporation since at least 2014 and is chartered by the State Board of Education of the State of Texas to operate as "a state authorized, open enrollment charter school . . . provid[ing] educational services to students in grades Pre K through 12" until July 2035. *See* IDEA Public Schools Return of Organization Exempt from Income Tax (TY 2024), https://apps.irs.gov/pub/epostcard/cor/742948339_202406_ 990_2025121623818681.pdf (accessed May 1, 2026). The Court concludes that the accuracy of these public records "cannot reasonably be questioned," and thus will "take judicial notice of IDEA Public Schools' status as "a private Texas Domestic Nonprofit Corporation 'in existence,' and an IRS-recognized 501(c)(3) K–12 nonprofit." *See MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 315 (5th Cir. 2019) (citations omitted) (affirming lower court taking judicial notice of entity's members based on public tax filings); *Swindol v. Aurora Flight Scis. Corp.*, 805

F.3d 516, 519 (5th Cir. 2015) (citing *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005)) (holding accuracy of corporate filings "contained on the Mississippi Secretary of State's and the Virginia State Corporation Commission's websites [could not] reasonably be questioned").

As for Plaintiffs' second request, "[o]nce qualified immunity is raised as a defense, a district court generally should not permit discovery until the immunity issues have been addressed." *Da Vinci Inv., Ltd. P'ship v. Parker*, 622 F. App'x 367, 377 (5th Cir. 2015). While limited discovery on issues related to immunity may be allowed where the district court "is unable to rule on the immunity defense without further clarification of the facts," such discovery is not available where a plaintiff has not yet plausibly alleged a violation of statutory or constitutional right. *Wicks v. Miss. State Emp. Servs.*, 41 F.3d 991, 994–95 (5th Cir. 1995) (quoting *Lion Boulos v. Wilson*, 834 F.2d 504, 507–08 (5th Cir.1987) (collecting cases). Until this threshold pleading requirement is met, "*any* discovery by [the plaintiff], even that [which is] limited in scope, is improper." *Id.* at 996. For the reasons set forth more fully below, *see* discussion *infra* Section III(D), Plaintiffs have not plausibly alleged a statutory or constitutional violation. Thus, the Court will not, and cannot, subject Defendants to discovery in any form.

Accordingly, the Motion for Judicial Notice is granted in part, as to the request that the Court take judicial notice of IDEA's corporate status, and denied in part, as to Plaintiffs' remaining requests.

### C. The Amended Complaint is the currently operative pleading.

Before addressing the merits of the motions to dismiss the Amended Complaint, the Court must first determine whether it should remain the operative pleading. The Court therefore considers in turn each motion seeking leave to file a second amended complaint, as well as all subsequently filed motions bearing on their disposition.

9

### 1. *The August 2024 Motion to Amend shall be stricken from the record.*

On August 30, 2024, Lance filed the August 2024 Motion to Amend, which included by attachment the First Proposed Second Amended Complaint. Aug. 2024 Mot. Amend. Ex. 2, "(Amend.) Compl. Viol. Const. Rights," ECF No. 68-2. Thereafter, on December 17, 2025, Lance filed a motion asking the court to withdraw or deny as moot the August 2024 Motion to Amend and its related attachments, as he intended to file a revised motion to amend. Dec. 2025 Mot. Withdraw 1–2.[3]

District courts retain an "inherent power 'to control the disposition of the causes on [their] docket[s] with economy of time and effort for [themselves], for counsel, and for litigants.'" *United States v. Filson*, 347 F. App'x 987, 991 (5th Cir. 2009) (per curiam) (quoting *United States v. Colomb,* 419 F.3d 292, 299 (5th Cir. 2005)). And, "as a valid exercise of their discretion in case management," district courts may grant parties leave to refile or amend motions and supporting documents. *Id.* at 991 (collecting cases). Such powers also authorize courts to grant parties' motions to withdraw, and in turn strike, their prior filings. *See Harrison v. Jefferson Cnty.*, No. 1:07-CV-112, 2008 WL 11348503, at *1 (E.D. Tex. June 20, 2008).

Here, the Court finds that granting Lance's request to withdraw his previous filing would serve the interests of judicial efficiency. Accordingly, the Court grants Lance's December 2025 Motion to Withdraw and orders that the Clerk of the Court strike the August 2024 Motion to Amend.

### 2. *The December 2025 Motion to Amend is denied.*

---

[3] Motions to amend pleadings, and by extension motions to strike or substitute exhibits contained in such filings, are non-dispositive pretrial matters which may be determined by a magistrate judge. *See PYCA Indus. v. Harrison Cnty. Waste Water Mgmt. Dist.*, 81 F.3d 1412, 1421 (5th Cir. 1996).

On the same day Lance requested to withdraw his August 2024 Motion to Amend, Plaintiffs filed a revised motion for leave to file a second amended complaint. The December 2025 Motion to Amend included an updated version of the proposed pleading—the Second Proposed Second Amended Complaint.

Relevant to the Court's consideration of the December 2025 Motion to Amend are two subsequently filed motions: (1) the January 2026 Motion to Supplement, in which Plaintiffs seek permission to submit additional evidence in support of the allegations set forth in the Second Proposed Second Amended Complaint; and (2) Plaintiffs' January 2026 Motion to Substitute, which requests leave to replace the Second Proposed Second Amended Complaint with a more developed Third Proposed Second Amended Complaint. *See* Jan. 2026 Mot. Suppl.; Jan. 2026 Mot. Sub.; Second Amend. Compl. [hereinafter "Third Prop. SAC"], ECF No. 102-1.

a. *The January 2026 Motion to Supplement is denied.*

In their January 2026 Motion to Supplement, Plaintiffs "seek leave to submit a classroom video from September 7, 2023," along with a transcript of the video and a declaration to authenticate the video. Jan. 2026 Mot. Suppl. 3. Plaintiffs state the purpose of the exhibit is to "corroborate" allegations contained in the proposed pleading attached to the December 2025 Motion to Amend. *Id.* at 1. Specifically, the exhibits are intended to "anchor[]" their allegations that L.D. and other non-party students were subject to multiple bag searches without their consent. *Id.* at 2.

Given the Court's recommendation that L.D.'s claims be dismissed, *see* discussion *supra* Section III(A), the exhibits, as described, would have little, if any, bearing on the disposition of Lance or Journey's remaining claims. Moreover, even assuming the exhibits substantiate facts relevant to Plaintiffs' claims, the Court has no need for corroborative evidence at this stage. In deciding whether to grant the December 2025 Motion to Amend, the Court is bound to "accept[]

11

all well-pleaded facts as true and must consider those facts in the light most favorable to the plaintiff." *Romero*, 888 F.3d at 176 (citing *Stokes*, 498 F.3d at 484); *see Varela*, 773 F.3d at 707 (citing *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152 (5th Cir. 2010)) (recognizing courts apply the same standard used for Rule 12(b)(6) dismissals in evaluating futility).  Thus, Plaintiffs' request to submit supporting evidence is superfluous, as the Court will take as true the factual allegations contained in the proposed second amended complaints, regardless of whether the allegations are supported by evidence.  Because allowing Plaintiffs an opportunity to file the exhibits would only delay resolution of the matter without aiding in disposition of the December 2025 Motion to Amend, the Court declines to exercise its discretion to permit supplemental filing. The Court therefore denies the January 2026 Motion to Supplement.

  b.  *The January 2026 Motion to Substitute is denied.*[4]

  In their January 2026 Motion to Substitute, Lance and Journey introduce a third iteration of the Proposed Second Amended Complaint and request that the Court (1) order the Third Proposed Second Amended Complaint be deemed the operative proposed pleading for the purpose of ruling on the December 2025 Motion to Amend; and (2) direct the Clerk of the Court to "replace" the Second Proposed Second Amended Complaint with the Third Proposed Second Amended Complaint.  Jan. 2026 Mot. Sub. 3.

  While courts have discretion to allow parties to amend supporting documents to promote judicial efficiency, the Court does not find that granting Plaintiffs' request would have such an effect.  *See Filson*, 347 F. App'x at 991.  As an initial matter, despite Plaintiffs' assurances that the Third Proposed Second Amended Complaint would "protect[] minor privacy," the filing contains

---

[4]    Because the Court recommends dismissal of the minors' claims on other grounds, *see* discussion *supra* Section III(A), it addresses the futility of the proposed amendment only as it relates to Lance and Journey's claims.

the first name of one of the minor children.  Jan. 2026 Mot. Sub. 1; Third Prop. SAC 43.  Thus, the substitution falls short of bringing about the privacy protections the district court had previously taken steps to ensure, and which the substitution was purportedly set forth to achieve.[5]

Moreover, even if the Court found it proper to permit Plaintiffs to file a redacted version of the Third Proposed Amended Complaint, the substitution would be futile for the reasons fully set forth below.

    i.   The proposed amendments to the First Amendment claims are futile.

Plaintiffs first allege Lance was retaliated against in violation of his First Amendment rights when Najera issued a No-Trespass Notice prohibiting him from entering all IDEA properties in El Paso County.  Third Prop. SAC 7.

"To bring a claim under [Section] 1983, a plaintiff must first show state action." *Pearson v. Shriners Hosps. for Child., Inc.*, 133 F.4th 433, 443 (5th Cir. 2025), *cert. denied*, 146 S. Ct. 329 (2025) (citing *Priester v. Lowndes Cnty.*, 354 F.3d 414, 421 (5th Cir. 2004); *Brentwood Acad. v. Tenn. Secondary Sch. Athl. Ass'n*, 531 U.S. 288, 295 n.2 (2001)).  Although the parties appear to have mutually assumed that Defendants are state actors, the Court will not accept that this

---

[5]    This is not the first time Lance has included L.D.'s name in his filings.  On February 12, 2025, after being apprised of another instance in which Lance's filings revealed L.D.'s first name, the district court found it proper to seal the filings under Fed. R. Civ. P. 5.2(e)(1), to avoid unnecessary intrusion into the minor child's privacy.  *See* Order 4–6, ECF No. 78 [hereinafter "Feb. 2025 Order"].  And, to promote "common-law right[s] of access," Lance was further ordered to re-file a redacted copy of the filing.  *Id.* at 5.

    This Court notes that in the February 2025 Order, the district court determined that "it appear[ed L.D.'s] Rule 5.2(a)'s protection [was] waived."  Feb. 2025 Order 5.  However, in each case cited in the underlying opinion, the child's Rule 5.2(a) protections were waived by parents who properly pursued claims on behalf of their minor children through counsel.  *See id.* (citing *Holt v. Target Co.*, No. 3:20-CV-0824, 2021 WL 2389476, at *2 n.4 (M.D. Tenn. May 6, 2021), *R. & R. adopted by* 2021 WL 2386124 (M.D. Tenn. June 10, 2021); *Zuchowski v. Alpena Pub. Schools*, No. 17-cv13345, 2018 WL 1947277, at *1 n.1 (E.D. Mich. Apr. 25, 2018); *Fitzpatrick v. City of Fort Wayne*, 259 F.R.D. 357, 363–64 (N.D. Ind. 2009)).  Given Lance is unable to appear *pro se* on behalf of L.D., Order Next Friend Decl. 6, it is less apparent that Lance had authority to validly waive L.D.'s Rule 5.2(a) protections.  In any event, in the interest of protecting minor privacy, the Clerk of the Court is ordered to seal the Third Proposed Second Amended Complaint.

    Upon closer inspection of the docket, the Court has similarly found that Lance's initial Complaint also includes L.D.'s full name.  *See* Compl. 10.  Accordingly, the Clerk shall likewise seal the Complaint.

requirement has been met without further analysis. *Blankenship v. Buenger*, 653 F. App'x 330, 335 (5th Cir. 2016) (collecting cases) (holding that while the question of whether state action exists is "necessarily fact-bound, . . . it is not a 'fact' that can be admitted"). Actions taken by private actors "may be deemed state action, for purposes of [S]ection 1983, only where the challenged conduct may be 'fairly attributable to the State.'" *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

In circumstances such as this, where a defendant is a private entity or employee, *see* discussion *supra* Section III(B), the Fifth Circuit has declined to attribute the defendant's conduct to the state unless one of the following conditions has been met: (i) the defendant "perform[ed] a traditional, exclusive public function"; (ii) the government compelled the defendant to engage in the particular conduct; (iii) the government and defendant acted jointly; (iv) the defendant was "entwined with governmental policies" or the government was "entwined in [the defendant's] management or control." *Pearson*, 133 F.4th at 443–44 (quoting *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019); then quoting *Brentwood Acad.*, 531 U.S. at 295).[6] "Deciding whether a deprivation of a protected right" falls within one of these categories "begins by identifying the specific conduct of which the plaintiff complains," as an individual or entity may serve as a state actor in certain contexts but not in others. *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 550 (5th Cir. 2005) (quoting *Am. Mfrs. Mut. Ins. v. Sullivan*, 526 U.S. 40, 51 (1999)) (citing *George v. Pacific-CSC Work Furlough*, 91 F.3d 1227, 1230 (9th Cir. 1996)).

In considering the applicability of the first condition, Plaintiffs cannot show the No-Trespass Notice was issued while the Defendants were performing "traditional, exclusive public

---

[6]    The Fifth Circuit has never ruled on whether a charter school is a "state actor" for the purposes of Section 1983 claims. *See Hopkins v. Wayside Schs.*, No. 23-50600, 2024 WL 3738478, at *2 n.1 (5th Cir. Aug. 9, 2024) (declining to rule on whether charter school was a state actor).

14

functions." Even if Defendants performed a public function by providing students with an education, satisfying the first condition requires that the performance was both traditional *and* exclusive. *Manhattan Cmty. Access Corp.*, 587 U.S. at 809 (collecting cases). Here, Plaintiffs cannot show that this educational function is held by the government as a matter of tradition, as "[h]istorically, education has not been a state function and only within the recent past has government decided to accept this responsibility." *Story v. Tate*, 382 F. Supp. 1078, 1079 (N.D. Tex. 1971). Moreover, given that private schools both predate and coexist with public schools, it cannot be said that the provision of education is exclusively governmental.

As to the remaining conditions, Plaintiffs do not allege that the state directed, agreed to, or had knowledge of the decision to issue the No-Trespass Notice. Prop. SAC 7; *see Pearson*, 133 F.4th at 444 (citing *Blum v. Yaretsky*, 457 U.S. 991, 1004–05 (1982)). Nor have they alleged the state otherwise "had any 'say'" in whether the notice was issued. *Id. (quoting Rundus v. City of Dall.*, 634 F.3d 309, 314–15 (5th Cir. 2011)).

Accordingly, Plaintiffs cannot, or have not, demonstrated that the aforementioned conditions applied to the issuance of the No-Trespass Notice, such that Najera and IDEA could be considered state actors. The First Amendment claims, as amended, are therefore subject to dismissal because Plaintiffs failed to allege the purported violations were committed by a person acting under color of state law.

ii. <u>The proposed amendments to the Fourth Amendment claims are futile.</u>

Plaintiffs next allege that several Defendants violated Journey's Fourth Amendment rights by subjecting her to repeated searches of her person and belongings without individualized suspicion. Third Prop. SAC 8.

Although courts generally prefer that state actors possess "some quantum of individualized suspicion" before engaging in a search, the Fourth Amendment does not impose an "irreducible

requirement" of such suspicion.  *Maryland v. King*, 569 U.S. 435, 447 (2013) (quoting *United States v. Martinez–Fuerte*, 428 U.S. 543, 560–561 (1976)).  In limited circumstances, "the Government's need to discover [hazardous] latent or hidden conditions, or to prevent their development, [may be] sufficiently compelling to justify the intrusion on privacy entailed by conducting such searches without any measure of individualized suspicion."  *Bd. of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie Cnty. v. Earls*, 536 U.S. 822, 829 (2002) (quoting *Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 668 (1989)) (citing *Skinner v. Ry. Lab. Executives' Ass'n*, 489 U.S. 602, 624 (1989)).

Given the need to ensure the safety of school children, the Supreme Court has held a search may be well-founded, even in the absence of individualized suspicion, where the government interests at stake are "important enough to justify the particular search at hand, in light of other factors that show the search to be relatively intrusive upon a genuine expectation of privacy."  *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 661 (1995) (emphasis omitted).  In such cases, a court must first determine (1) the nature and immediacy of the implicated government interest, (2) the efficacy of the search in addressing the need, (3) the nature of the privacy interest intruded upon by the search, and (4) the character of the intrusion.  *Id.* at 664–65.  Then, applying a sliding-scale analysis – under which more substantial privacy intrusions may be justified by a higher degree of government concern – the court must determine whether the search was warranted.  *Id.*[7]

In considering the first factor, the Court finds there are few dangers more time-sensitive than a firearm in a child's hands, and few government interests more significant than safeguarding

---

[7]    The Court finds the attachments and allegations indicating the search operations were "conducted by and under the direction of" the El Paso County Sheriff Department are sufficient, at this stage, to demonstrate Defendants were entwined, or acting jointly, with state actors for the purposes of establishing state action.  *See* Third Prop. SAC 5, 14–15; *see also Pearson*, 133 F.4th at 443–44; *Grant v. Sistrunk*, 41 F.3d 663 (5th Cir. 1994) (holding it is "beyond dispute" that officials of a county sheriff's department were state actors).

against gun violence in schools. *See Milligan v. City of Slidell*, 226 F.3d 652, 655 (5th Cir. 2000) (recognizing school's goal of protecting students from immediate harm and deterring "possibly violent misconduct" as compelling governmental interests); *Stockton v. City of Freeport*, 147 F. Supp. 2d 642, 646 (S.D. Tex. 2001), *aff'd sub nom.*, 37 F. App'x 712 (5th Cir. 2002) (citations omitted) ("It is difficult to conceive of a scenario in which a greater governmental interest is invoked than the threat of indiscriminate violence at school."). Indeed, when perceived dangers implicate schoolchildren's safety or well-being, the need for state intervention "is magnified by the fact that this evil is being visited not just upon individuals at large, but upon children for whom [the state] has undertaken a special responsibility of care and direction." *Earls*, 536 U.S. at 834 (citing *Vernonia*, 515 U.S. at 660).[8] Accordingly, the first factor strongly supports a finding of reasonableness

As to the efficacy of the means used to ensure students' safety, it is evident that searching students' schoolbags – and even their outer clothing – is a suitable means to discover concealed weapons. Under the circumstances presented here, where a weapon has been reported but not found, the decision to search students who do not match the initial description does not render the search ineffective or otherwise compel a conclusion that it was unjustified. Even if more generalized searches were less likely to lead to discovery of the firearms, the Supreme Court has "repeatedly refused to declare that only the 'least intrusive' search practicable can be reasonable under the Fourth Amendment." *Vernonia*, 515 U.S. at 663 (citing *Skinner*, 489 U.S. at 629 n.9); *Thompson v. Carthage Sch. Dist.*, 87 F.3d 979, 980 (8th Cir. 1996) (finding justified search in which all male students from grades six through twelve were searched for weapons, even where

---

[8] That the report was unconfirmed and no weapons were ultimately found does not render the government's then-existing interests in promptly investigating the report and locating a possible weapon any less compelling.

evidence of possession was only tied to students traveling to school on one bus).[9]  Moreover, because the reported firearm had not yet been found, the schoolwide search allowed IDEA to promptly determine whether the described student had transferred the firearm to another student and rule out the possibility that multiple firearms could be present on campus. The search was therefore an effective means of determining whether any students possessed a firearm.  And, had a weapon been on campus, would likely have been effective in identifying its location.  Thus, this second factor weighs heavily against a finding of unreasonableness.

As to the third factor, "[w]hile schoolchildren do not shed their constitutional rights when they enter the schoolhouse, . . . 'Fourth Amendment rights ... are different in public schools than elsewhere; the 'reasonableness' inquiry cannot disregard the schools' custodial and tutelary responsibility for children.'"  *Earls*, 536 U.S. at 829–30 (quoting *Tinker v. Des Moines Indep. Comty. Sch. Dist.*, 393 U.S. 503, 506 (1969); then quoting *Vernonia*, 515 U.S. at 656).  Thus, although students retain privacy interests, the nature of those interests are somewhat diminished in the school setting, where administrators are "responsible for maintaining discipline, health, and safety" for all students.  *Id.* at 830.  Therefore, this factor cuts only slightly against reasonableness.

Regarding the final factor, the Court must consider not only how invasive the search would be under ordinary circumstances, but also the degree of intrusion relative to "the age and sex of the student and the nature of the infraction."  *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 375 (2009) (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 342 (1985)).  While a search of a student's outer clothing and personal belongings should not be lightly dismissed as noninvasive,

---

[9]     Indeed, the Supreme Court has recognized that characteristics unique to the school environment can render generalized searches a more suitable method of locating dangerous contraband – such as the potential for student embarrassment, the limitations of untrained officials' judgment in evaluating threats, and the heightened risk of discrimination in selecting students to be searched.  *See Vernonia*, 515 U.S. at 663.

the Supreme Court has recognized that such searches are not *excessively* intrusive, even in circumstances that did not involve the acute and urgent dangers associated with firearms. *Id.* at 374 (search of thirteen-year-old student's outer clothing and bag for drugs "was not excessively intrusive"). While the public nature of the search may create a heightened level of intrusion, comparable public weapons searches have been held to be "minimally intrusive" in light of the potential for harm. *See Thompson*, 87 F.3d at 983 (approving weapons search requiring all male students in grades six through twelve to submit to public search of jackets, shoes, socks, and pockets). And neither Journey's age nor her gender rendered her markedly more vulnerable to embarrassment or discomfort during a straightforward search of her belongings, such that these considerations could plausibly transform the search into one of excessive intrusiveness.

Considering all the factors together, particularly the compelling government interests at stake and the efficacy of the means used, Plaintiffs have failed to plausibly allege that the search was unreasonable. Accordingly, Journey's Fourth Amendment claim, as amended, would be subject to dismissal.

   iii. The proposed amendments to the Fourteenth Amendment claims are futile.

In the Third Proposed Second Amended Complaint, Plaintiffs allege they were deprived of procedural due process rights when IDEA "failed to provide meaningful corrective action" in response to Lance's request for a third-level appeal of the decision issued in response to his post-search grievances. Third Prop. SAC 5. The Proposed Second Amended Complaint specifies that, as to the Fourteenth Amendment claim, the Plaintiffs "seek only prospective declaratory/injunctive relief to ensure non-retaliatory, meaningful access to grievance procedures." *Id.* at 9.

Where a plaintiff seeks injunctive or declaratory relief, he "must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future" to satisfy Article III standing requirements. *Waller v. Hanlon*, 922 F.3d 590, 603 (5th Cir. 2019) (quoting *Bauer v.*

19

*Texas*, 341 F.3d 352, 358 (5th Cir. 2003)).  However, given that Journey has since withdrawn from IDEA, Third Prop. SAC 6, she cannot plausibly allege that she is likely to be subject to an unlawful search by IDEA staff in the future, *see Esfeller v. O'Keefe*, 391 F. App'x 337, 340 (5th Cir. 2010) (citing *Ward v. Santa Fe Indep. Sch. Dist.*, 393 F.3d 599, 606 (5th Cir. 2004); *Hole v. Tex. A & M Univ.*, No. 04–CV–175, 2009 U.S. Dist. LX 123291, at \*20 (S.D.Tex. Feb. 10, 2009)) (holding student was not likely to sustain future injury from challenged school policy where he was "no longer enrolled in the school whose policies he is challenging").  The Fourteenth Amendment claims, challenging IDEA's search policies and related grievance procedures, are therefore subject to dismissal for lack of standing.[10]

    iv.  <u>The proposed addition of Texas *ultra vires* claims is futile.</u>

In the Motion to Substitute, Plaintiffs seek to asserts *ultra vires* claim against Defendants for "prospective adherence to constitutional standards for student searches and grievance processing," as well as "[r]ecission and expungement of the No-Trespass Notice" and "non-retaliation for protected speech."  Third Prop. SAC 9–10.

As to the request for "prospective adherence to constitutional standards for student searches and grievance processing," Plaintiffs failed to allege likelihood of harm from future grievance proceedings or searches.  Because the children are no longer enrolled at the school, Plaintiffs cannot establish standing as to this first request.  *See Esfeller*, 391 F. App'x at 340 (citations omitted).

---

[10]    For the reasons set forth in the Court's discussion of the Second Proposed Second Amended Complaint, the Court also concludes that Plaintiffs failed to plausibly allege that Defendants were state actors. *See* discussion *infra* Section III(C)(2)(c)(ii). However, it need not determine futility on that basis here, as there is no standing over the claims for injunctive relief.

Even if Plaintiffs could prove a likelihood of future harm, they have failed to establish their entitlement to *ultra vires* relief under Texas law.  Where, as here, a plaintiff challenges acts performed in the course of a nonprofit's operation, Texas law provides that only the nonprofit's members, shareholders, or former shareholders may bring an *ultra vires* claim.  *See* Tex. Bus. Orgs. Code § 20.002(c)(1); *Carmichael v. Tarantino Props., Inc.*, 604 S.W.3d 469, 475 (Tex. App. 2020) (stating Section 20.002(c)(1) governs whether a plaintiff can assert *ultra vires* claims on behalf of a nonprofit corporations); *In re LoneStar Logo & Signs, LLC*, 552 S.W.3d 342, 352 (Tex. App. 2018) (holding Section 20.002(c)(1) implies standing for former shareholders).[11]  Thus, individuals or entities who are not members, shareholders, or former shareholders lack standing to bring *ultra vires* claims.  Here, Plaintiffs do not allege that they ever claimed membership or shareholder rights in IDEA.  *See* Third Prop. SAC.  Absent any such allegations, Plaintiffs have not shown that they may pursue *ultra vires* relief.

Plaintiffs have thus failed to establish they have standing to seek the first requested injunction and, more generally, have failed to show that *ultra vires* relief is available to them in any form. Thus, the proposed substitution is futile.

Accordingly, the January 2026 Motion to Substitute is denied.

c.  *The amendments proposed in the December 2025 Motion to Amend are futile.*

Like the proposed pleadings attached to the Motion to Substitute, the Second Proposed Second Amended Complaint submitted with the December 2025 Motion to Amend includes Section 1983 claims arising from alleged First, Fourth, and Fourteenth Amendment violations,  as well as Texas *ultra vires* claims.  *See* Dec. 2025 Mot. Amend 5, 14–20.

---

[11]    An individual is considered a "member" of a nonprofit corporation only if they "ha[ve] membership rights in the nonprofit corporation under its governing documents."  Tex. Bus. Orgs. Code § 1.002(53)(B); *see Carmichael*, 604 S.W.3d at 475 n.8.

i.  The proposed amendments to the First Amendment, Fourth Amendment, and Texas *ultra vires* claims are futile.

As to the First Amendment, Fourth Amendment, and Texas *ultra vires* claims, the allegations and requested relief in the Second Proposed Second Amended Complaint largely mirror those contained in the Third Proposed Second Amended Complaint. For the reasons stated above, Plaintiffs' First Amendment, Fourth Amendment, and Texas *ultra vires* claims are subject to dismissal. *See* discussion *supra* Section III(C)(2)(b)(i), (ii), (iv).

ii.  The proposed amendments to the Fourteenth Amendment claims are futile.

As with the Third Proposed Second Amended Complaint, Plaintiffs seek to support their Fourteenth Amendment claims by alleging IDEA and its officials denied Lance "access to [IDEA's] Level 3 grievance process," and thus prevented Plaintiffs from "challenging the basis for the searches." Dec. 2025 Mot. Amend 5. However, unlike the pleadings attached to the Motion to Substitute, Plaintiffs seek both equitable and monetary relief. *See id.* at 20.

First, insofar as Plaintiffs seek equitable relief, they have failed to plausibly allege Article III standing requirements are met. *See* discussion *supra* Section III(C)(2)(b)(iii).

Second, even if the Court had standing over both requests for relief, Plaintiffs fail to allege any of the private actors "perform[ed] a traditional, exclusive public function" when carrying out the grievance process, or that the government was in any way involved in grievance decisions. *See Pearson*, 133 F.4th at 443–44. Accordingly, Plaintiffs have not plausibly alleged that the conduct of Defendants, a private entity and its employees, is attributable to the State such that it may be treated as state action. The Second Proposed Second Amended Complaint thus fails to state a claim for relief under Section 1983.

Given that the amendments contained in the Second Proposed Second Amended Complaint are futile, Plaintiffs' December 2025 Motion to Amend is denied. The Amended Complaint therefore serves as the operative complaint for the purpose of ruling on the Motions to Dismiss.

**D. The Court recommends that the Motions to Dismiss be granted in part, denied in part, and denied as moot in part.**

In the Amended Complaint, Plaintiffs seek compensatory and punitive damages for the alleged deprivation of their First, Fourth, and Fourteenth Amendment rights by Movants.[12] In response, each Movant asks that the claims brought against them be dismissed with prejudice for, *inter alia*, failure to state a claim. Najera Mot. Dismiss 5–10, 5 n.3; Cantu Mot. Dismiss 4–5; Cottrill Mot. Dismiss 4–5; Gray & Waters Mot. Dismiss 6–11; Stidham Mot. Dismiss 5–11.[13]

---

[12]    While the Amended Complaint was initially filed by Lance on behalf of himself, L.D. and L.J., and then-minor Journey, Journey has since reached the age of majority and expressly stated she "ratifies, joins, and adopts" all pleadings asserted on her behalf in this action, Journey Davis' Ratif., Joinder, & Adopt. Pleadings, ECF No. 104. Accordingly, the Court will treat the Amended Complaint as if it were filed by Journey and Lance.

[13]    Movants also advanced additional arguments for dismissing the claims, which the Court considers – and rejects – below.

First, Defendants Najera, Cottrill, Gray, Waters, and Stidham argue that they are entitled to dismissal under qualified immunity doctrine. Najera Mot. Dismiss 10–11; Cottrill Mot. Dismiss 5–10; Gray & Waters Mot. Dismiss 11–14; Stidham Mot. Dismiss 11–13. However, where plaintiffs fail to state a plausible claim for relief, courts "need not address the sufficiency of the individual defendant' claims of qualified immunity." *Jabary v. City of Allen*, 547 F. App'x 600, 605 (5th Cir. 2013). Therefore, given that the Court herein finds Plaintiffs have otherwise failed to state a plausible claim, it need not address the viability of a qualified immunity defense.

Second, Najera, Cottrill, Gray and Waters each argue that the Amended Complaint "lacks an arguable basis in law or fact," and thus must be dismissed as frivolous. Najera Mot. Dismiss 5, n.2; Cottrill Mot. Dismiss 11; Gray & Waters Mot. Dismiss 14. While 28 U.S.C. § 1915(e)(2)(B)(i) authorizes the court to dismiss the complaint of a plaintiff proceeding *in forma pauperis* as frivolous if the claims "lack[] an arguable basis in law or fact," *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)), such a dismissal is not available here, where Plaintiffs have not been granted leave to proceed *in forma pauperis*. Accordingly, the Court does not find dismissal is warranted on these grounds. And, to the extent Najera, Cottrill, Gray and Waters intended to seek dismissal of frivolous claims under Federal Rule of Civil Procedure 11, a motion for sanctions "must be made separately from any other motion." Fed. R. Civ. P. 11(c)(2). Thus, even if Defendants moved for dismissal under Rule 11, such a request must be denied because it was improperly included within Rule 12 motions to dismiss.

Next, Defendant Najera argues that the Section 1983 claims should be dismissed for "failure to exhaust administrative remedies." Najera Mot. Dismiss 11–12. However, it is well-settled that "exhaustion of state remedies is not a prerequisite to an action under [Section] 1983." *Stanley v. Morgan*, 120 F.4th 467, 471 (5th Cir. 2024), *cert. denied,* 145 S. Ct. 1314 (2025) (quoting *Knick v. Twp. of Scott*, 588 U.S. 180, 185 (2019)). Accordingly, this grounds for dismissal also fails.

Finally, Defendant Stidham argues that the Lance failed to establish his standing to bring the suit on Journey's behalf. *See* Stidham Mot. Dismiss 3–4. Given that Journey has since reached the age of majority and appeared on her own behalf, Notice Appear., these grounds for dismissal of Journey's claims are moot.

23

1. ***The Court recommends the Motions to Dismiss be denied as moot in part, as to the claims brought on behalf of L.D. and L.J.***

Should the district court adopt this Court's recommendation to dismiss the claims brought on behalf of L.D. and L.J., *see* discussion *supra* Section III(A), the Motions to Dismiss would be moot as to their claims. Accordingly, the Court recommends the Motions to Dismiss be denied as moot as to the claims brought on behalf of the minors.

2. ***The Court recommends the Motions to Dismiss be granted in part, insofar as Movants request Lance and Journey's Fourth Amendment claims be dismissed with prejudice as to Movants.***

In the Amended Complaint, Plaintiffs first allege Journey was deprived of her Fourth Amendment rights when, after receiving a report of a student with a firearm on campus, IDEA searched Journey without consent and even though she "did not fit the description of the alleged offender." Amend. Compl. 5.

First, Lance does not allege that he was himself subject to an unreasonable search. Insofar as he seeks to claim that the searches of his children resulted in a violation of his own constitutional rights, "attempts to vicariously assert violations of the Fourth Amendment rights of others have been repeatedly rejected by [the Supreme Court]." *United States v. Salvucci*, 448 U.S. 83, 86–87 (1980) (citing *Alderman v. United States*, 394 U.S. 165, 174 (1969); *Brown v. United States*, 411 U.S. 223, 230 (1973)). Accordingly, Lance's Fourth Amendment claim is subject to dismissal for failure to state a claim.

As to Journey's Fourth Amendment claim, the mere fact that Journey was not suspected and did not match the description of the student reportedly in possession of the firearm does not make the search unreasonable, given the circumstances of the search. *See* discussion *supra* Section III(C)(2)(b)(ii). And, without asserting specific supporting facts, Plaintiffs' conclusory characterization of the search as "unreasonable" does not act to bolster their allegations. *See*

24

*Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."); *Bates v. Wellman*, No. 3:22-CV-02006-K (BT), 2024 WL 330498, at *2, 4 (N.D. Tex. Jan. 2, 2024), *R. & R. adopted*, 2024 WL 330833 (N.D. Tex. Jan. 29, 2024) (citing *Fernandez-Montes*, 987 F.2d at 284; *Van Cleave v. United States*, 854 F.2d 82, 84 (5th Cir. 1988)) (holding "conclusory assertion that the search was illegal, without supporting facts, is not enough" to state a Fourth Amendment claim). Therefore, Journey's Fourth Amendment claim should similarly be dismissed under Rule 12(b)(6).

In response to the Motions to Dismiss, Plaintiffs ask that, "[i]f the [C]ourt should be inclined to grant the Defendant[s'] Motion[s], . . . [it] do[] so without prejudice." Opp. Rule 12(b)(6) Mot. Dismiss 6, ECF No. 31 [hereinafter "Resp. Najera Mot. Dismiss"]; Opp. Gray Rule 12(b)(6) Mot. Dismiss 6, ECF No. 38 [hereinafter "Resp. Gray Mot. Dismiss"]; Opp. Waters Rule 12(b)(6) Mot. Dismiss 6, ECF No. 40 [hereinafter "Resp. Waters Mot. Dismiss"]; Opp. Def. Cottrill 12(b)(6) Mot. Dismiss 6, ECF No. 41 [hereinafter "Resp. Cottrill Mot. Dismiss"]; Opp. Def. Cantu Rule 12(b)(6) Mot. Dismiss 2, ECF No. 79 [hereinafter "Resp. Cantu Mot. Dismiss"]; Opp. Def. Stidham Rule 12(b)(6) Mot. Dismiss 6, ECF No. 84 [hereinafter "Resp. Stidham Mot. Dismiss"]. However, such an accommodation is not required here. The motions to dismiss, and Stidham's motion in particular, placed Plaintiffs on notice of the deficiencies in the Amended Complaint that ultimately prove dispositive: specifically, that mass searches by school officials are not inherently unreasonable and may be justified where students' privacy interests are outweighed by the government's compelling interest in protecting students from weapons-related violence. *See* Stidham Mot. Dismiss 6–11. Yet, even after being placed on notice of this deficiency, Plaintiffs' responses to the Motions to Dismiss, and the supplemental facts presented in those

responses, fail to cure the deficiency. *See* Resp. Najera Mot. Dismiss; Resp. Gray Mot. Dismiss; Resp. Waters Mot. Dismiss; Resp. Cottrill Mot. Dismiss; Resp. Cantu Mot. Dismiss; Resp. Stidham Mot. Dismiss. Likewise, the more detailed factual allegations presented in their subsequently filed proposed amended pleadings also fail to demonstrate that it is plausible that the search was unreasonable in light of the compelling governmental interests involved. *See* discussion *supra* Section III(C)(2)(b)–(c). The Court concludes that Plaintiffs have presented their best case as to Journey's Fourth Amendment claim. *Dark*, 293 F'Appx. at 257–58 (holding plaintiff pleaded best case where she filed a lengthy response to a motion to dismiss defending the deficiencies in her complaint after being apprised of the complaint's potential for insufficiency). Even still, Plaintiffs' "best case" fails to satisfy Rule 12(b)(6).

Accordingly, Movants' requests that the Court dismiss with prejudice Journey's Fourth Amendment should be granted.

3. ***The Court recommends Najera's Motion to Dismiss be granted in part and denied in part, insofar as she requests Lance's First Amendment claim against her be dismissed without prejudice.***

In support of her request to dismiss Lance's First Amendment claim, Najera argues he "failed to assert facts sufficient to allow the Court to reasonably infer that [Lance] engaged in protected speech, that Najera took against him because of that protected speech, or that the No Trespass [Notice] banned his speech sufficient to raise an inference that Najera is liable for First Amendment violations." Najera Mot. Dismiss 6 (citations omitted). The Court agrees that Lance's First Amendment claim should be dismissed, as his sparse allegations that Najera issued Lance a No-Trespass Notice under "false pretenses," Amend. Compl. 5, do not demonstrate that Lance participated in protected expressive activity or that he was inhibited from doing so.

While Lance's First Amendment claim should be dismissed as to Najera, it is not clear that it should be dismissed without prejudice. In subsequent filings, Lance supplements his allegations

in a manner that appears to cure the identified deficiencies. Specifically, in the Third Proposed Second Amended Complaint, Lance alleges that he emailed senior leadership on February 14, 2024, criticizing the decision to install Najera as principal and raising school-safety concerns, and that less than two hours later Najera issued a No-Trespass Notice barring him from IDEA properties. Those allegations appear to be sufficient, at least at this stage, to address those deficiencies identified in Najera's Motion to Dismiss. *See Swilley v. Alexander*, 629 F.2d 1018, 1021 (5th Cir. 1980) (holding remarks directed at a principal concerning "the professional conduct of school employees" and "the physical safety and well-being of . . . school children" fall within the protection of the First Amendment); *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (quoting *O'Neal v. Ferguson Constr. Co.,* 237 F.3d 1248, 1253 (C.A.10 2001) (at the motion-to-dismiss stage, temporal proximity between a protected activity and alleged retaliation is sufficient to establish a prima facie case where the protected conduct and adverse action occur in "very close" proximity).

Because the subsequent filings indicate that Lance has shown he is able to cure the deficiencies identified in Najera's Motion to Dismiss, the Court finds that he has not yet had an opportunity to plead his best case. And, although Lance has not yet demonstrated that he can establish state action, the Court is not persuaded at this stage that Lance's attempts to do so would be futile.

Accordingly, Najera's Motion to Dismiss should be granted in part, as to her requests that Lance's First Amendment claim be dismissed with respect to her, and denied in part, as to her request that such a dismissal be *with prejudice*.[14]

---

[14] The Court further concludes that Lance's First Amendment claim must be dismissed because he has failed to allege state action – a basis for dismissal not previously addressed in the Motions to Dismiss. *See* discussion *supra* Section III(C)(2)(b)(i). Lance is advised that, having now been made aware of this deficiency, any future attempt to

> **4.** ***The Court recommends Cantu, Cottrill, Gray, Waters, and Stidham's Motions to Dismiss be granted in part, insofar as they request Lance's First Amendment claim against them be dismissed with prejudice.***

The Amended Complaint contains no allegations connecting Cantu, Cottrill, Gray, Waters, and Stidham to the conduct underlying Lance's First Amendment claim. Cantu, Cottrill, Gray, and Waters are mentioned only in relation to their supervisory roles over Stidham, and Stidham is referenced solely in connection with the conduct forming the basis of Plaintiffs' Fourth Amendment claim. *See* Amend. Compl. 5–6. Resultingly, in their Motions to Dismiss, Cantu, Cottrill, Gray, Waters, and Stidham each contend that Lance has not plausibly set forth a First Amendment claim against them. Cantu Mot. Dismiss 4–5; Cottrill Mot. Dismiss 4–5; Gray & Waters Mot. Dismiss 3–4; Stidham Mot. Dismiss 5–7.

Lance does not cure this deficiency in his responses to the Motions to Dismiss. *See* Resp. Gray Mot. Dismiss; Resp. Waters Mot. Dismiss; Resp. Cottrill Mot. Dismiss; Resp. Cantu Mot. Dismiss; Resp. Stidham Mot. Dismiss. Moreover, in his Third Proposed Second Amended Complaint – the most comprehensive of his proposed pleadings – he entirely abandons the First Amendment claim brought against Cantu, Cottrill, Gray, Waters, and Stidham in their individual capacities, clarifying that his claim is brought against Najera and IDEA. *See* Third Prop. SAC 7. The Court finds Lance was provided an adequate opportunity to plead his best case as to the claim and failed to cure the deficiencies. Therefore, Lance's First Amendment claim should be dismissed with prejudice as to Stidham, Gray, Waters, Cantu, and Cottrill.

> **5.** ***Movants' requests that the Court dismiss with prejudice Lance's Fourteenth Amendment claim should be granted.***

---

reassert his First Amendment claim against Najera may be dismissed with prejudice if he is unable to plausibly allege state action.

In support of Lance's Fourteenth Amendment claim, Plaintiffs alleges only that Najera "violated [Lance's] 14ᵗʰ Amendment by not allowing an appeals process to the decision [to issue a No-Trespass Notice]."  Amend. Compl. 6.[15][16]

"The first inquiry in every due process challenge—whether procedural or substantive—is whether the plaintiff has been deprived of a protected interest in property or liberty."  *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1014 (5th Cir. 2023) (quoting *Edionwe v. Bailey*, 860 F.3d 287, 292 (5th Cir. 2017)).  Liberty interests may be identified using "two sources: (1) 'the Constitution itself, by reason of guarantees implicit in the word 'liberty' '; and (2) 'an expectation or interest created by state laws or policies.'"  *Adams v. City of Harahan*, 95 F.4th 908, 913 (5th Cir. 2024), *cert. denied sub nom.*, 145 S. Ct. 278 (2024) (citing *Holden v. Perkins*, 398 F. Supp. 3d 16, 23 (E.D. La. 2019)).

Here, Lance does not assert a property interest; rather, he appears to claim a liberty interest in access to his children's school campus.  While parents have a fundamental right "to direct the upbringing and education of children under their control," *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (quoting *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534–535 (1925)), neither the Fifth Circuit nor the Supreme Court have held this right extends so far as to create a liberty interest in physical access to their children's educational environments, *see Meadows v. Lake Travis Indep. Sch. Dist.*, 397 F. App'x 1, 3 (5th Cir. 2010) (per curiam) (unpublished) (declining to hold a parent's right to direct a child's education "extends so far as to include the unfettered right of a parent to visit all

---

[15]     To the extent Lance sought to claim IDEA's refusal to fulfill his request for a video of the incidents leading to Najera's issuance of the No-Trespass Notice, Amend. Compl. 6, he has similarly alleged no facts to show that he has a property or liberty interest in such recordings.

[16]     In their Second and Third Proposed Second Amended Complaints, Plaintiffs appear to have abandoned any Fourteenth Amendment claim they may have had arising from the No-Trespass appeal.  Instead, they elected to introduce a new Fourteenth Amendment claim challenging the grievance procedures implemented following the school search. Although the Court has addressed the merits of those search-appeal claims, *see* discussion *supra* Section III(C)(2)(b)(iii), (c)(ii), it will not dismiss claims that are not presently before it.

29

areas of a school campus while students are present"); *Nevares*, 111 F.3d at 27 (recognizing Fifth Circuit has "rejected arguments that there is any [constitutionally] protected interest in the separate components of the educational process").

In light of the Fifth Circuit's holdings and the Supreme Court's general reticence in recognizing new constitutional rights, *Saenz v. Heldenfels Bros.*, 183 F.3d 389, 392 (5th Cir. 1999) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)) (recognizing "the Supreme Court has cautioned federal courts to use 'judicial self-restraint' and 'exercise the utmost care' when asked to find new rights secured by the Due Process Clause"), district courts have regularly refused to hold that parents have a constitutionally protected right to access school buildings, particularly where the parent was not otherwise excluded from making decisions concerning his child's education. *See Roberts v. Sinton Indep. Sch. Dist.*, No. 2:18-CV-101, 2019 WL 93308, at *3 (S.D. Tex. Jan. 3, 2019) (collecting cases) ("Case law has clearly established that schools can lawfully restrict parents' access to their child's school as long as the parents retain an avenue to communicate with the school."); *Mejia v. Holt Pub. Schs.*, No. 5:01-CV-116, 2002 WL 1492205, at *4 (W.D. Mich. Mar. 12, 2002) (citation omitted) ("[G]iven the Supreme Court's restraint in delineating the scope of parents' fundamental rights with respect to education, . . . this Court declines to hold that parents have a fundamental right to participate in their children's education through physical access to school property, teachers, or administrators."); *Ryans v. Gresham*, 6 F. Supp. 2d 595, 601 (E.D. Tex. 1998) ("An exhaustive review of the case law pertaining to the constitutional right of parents to direct the education of their children discloses no holding even remotely suggesting that this guarantee includes a right to access to the classes in which one's child participates."). Accordingly, this Court so too finds that Lance has no protectable constitutional right to access the IDEA campus.

30

Similarly, Lance has not presented, nor has the Court independently found, any provision of Texas law guaranteeing parents access to their children's school campuses. When faced with issues mirroring those considered here, district courts within the state of Texas have held "[t]he rights afforded to parents of students under Texas law include no duty to provide parents with access to classes." *Meadows v. Braxdale*, No. A-08-CA-819-SS, 2009 WL 10700907, at *10 (W.D. Tex. Aug. 18, 2009), *aff'd sub nom. Lake Travis Indep. Sch. Dist.*, 397 F. App'x 1 (citing *Ryans*, 6 F. Supp. 2d at 602 n.16).[17] This Court likewise finds that Plaintiffs have not shown that Lance was denied a right guaranteed to him under state law.

Without a protectable liberty or property interest at stake, Lance's due process claim is subject to dismissal. And because Lance's claim is predicated on a liberty interest that does not exist, no supplemental factual allegations could cure that defect. Accordingly, amendment of the pleadings would be futile and the Fourteenth Amendment claim asserted by Lance against Movants should be dismissed with prejudice.

### 6. *The Court recommends the Motions to Dismiss be granted in part, insofar as Movants request Journey's First and Fourteenth Amendment claims be dismissed with prejudice as to Movants.*

The Amended Complaint does not clearly specify whether Journey intends to assert a First or Fourteenth Amendment claim, and it contains no factual allegations showing that she personally suffered a violation of the rights guaranteed to her under either Amendment. Accordingly, to the extent Journey seeks to assert such claims based on alleged violations of her father's rights, "[a] third party may not assert a civil rights claim based on the civil rights violations of another

---

[17]    In response to the Motion to Dismiss, Lance attempts to argue that a such a right can be inferred from Texas Education Code § 37.105, which sets forth the state's procedure when removing unauthorized persons from district-owned property. *See* Resp. Najera Mot. Dismiss 3–5; § 37.105. Lance's reliance on the code is misplaced, as the cited provisions do not confer upon parents an unrestricted right to enter school campuses, let alone charter school campuses. *Id.*

individual." *Barker v. Halliburton Co.*, 645 F.3d 297, 300 (5th Cir. 2011) (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1160–61 (5th Cir. 1986)).  Therefore, the claims are subject to dismissal, and any attempts to amend the claims would be futile.

Accordingly, to the extent Journey seeks to assert a First or Fourteenth Amendment claim based on the events alleged in the Amended Complaint, Journey's First and Fourteenth Amendment claims against Movants should be dismissed with prejudice.

Thus, the Court recommends that the Motions to Dismiss brought by Cantu, Cottrill, Gray, Waters, and Stidham be granted in part and denied in part.  The further Court recommends that Najera's Motion to Dismiss be granted in part, denied in part, and denied as moot in part.

## IV.    CONCLUSION

**IT IS THEREFORE ORDERED** that:

1. Plaintiffs Lance and Journey Davis's "Notice and Motion for Judicial Notice of Corporate Status Evidence and Short Brief on Clark Factors (Eleventh Amendment)," ECF No. 116, is **GRANTED IN PART**, as to the request that the Court take judicial notice of IDEA's corporate status, and **DENIED IN PART**, as to Plaintiffs' remaining requests;

2. Plaintiff Lance Davis's "Motion to Withdraw Pending Motion for Leave to Amend," ECF No. 98, is **GRANTED**;

3. the Clerk of the Court shall **STRIKE** Plaintiff Lance Davis's "Motion for Leave to Amend," ECF No. 68, along with each of its attachments, ECF Nos. 68-1, 68-2, 68-3, and 68-4;

4. Plaintiffs Lance and Journey Davis's "Second Opposed Motion for Leave to File Supplemental Exhibit in Support of Second Amended Complaint Attached to ECF No. 99," ECF No. 106, is **DENIED**;

5. Plaintiffs Lance and Journey Davis's "Motion to Substitute Proposed Amended Complaint Attached to ECF No. 99," ECF No. 102, is **DENIED**;

6. Plaintiffs Lance and Journey Davis's "Opposed Motion for Leave to File Second Amended Complaint," ECF No. 99, is **DENIED**; and

7. the Clerk of the Court shall **SEAL** the Complaint, ECF No. 1, and Third Proposed Second Amended Complaint, ECF No. 102-1.

**IT IS FURTHER RECOMMENDED** the Court **ORDER**:

1. the claims brought on behalf of L.D. and L.J. be **DISMISSED WITHOUT PREJUDICE**, as to all Defendants;

2. "Defendant Alejandra Najera's Rule 12(b)(6) Motion to Dismiss," ECF No. 25, be **GRANTED IN PART, DENIED IN PART,** and **DENIED AS MOOT IN PART** such that:
   a. the request that the Court dismiss the claims brought against Movants on behalf of L.D. and L.J. be **DENIED AS MOOT**;
   b. the request that Journey's claims against her be dismissed with prejudice be **GRANTED**;
   c. the request that Lance's Fourth and Fourteenth Amendment claims be dismissed with prejudice be **GRANTED**; and
   d. the request that Lance's First Amendment claim against her be dismissed with prejudice be **GRANTED IN PART**, as to the request that Lance's First Amendment claim be dismissed, and **DENIED IN PART**, as to the request that such a dismissal be *with prejudice*;

3. the claims brought by Journey against Najera be **DISMISSED WITH PREJUDICE**;

4. the First Amendment claim brought by Lance against Najera be **DISMISSED WITHOUT PREJUDICE**;

5. the Fourth and Fourteenth Amendment claims brought by Lance against Najera be **DISMISSED WITH PREJUDICE**;

6. "Defendant Ernesto Cantu's Rule 12(b)(6) and Rule 21 Motion to Dismiss," ECF No. 27, be **GRANTED IN PART** and **DENIED AS MOOT IN PART** such that:
   a. the request that the claims brought on behalf of L.D. and L.J. against Cantu be **DENIED AS MOOT**; and
   b. the request that Lance and Journey's claims against Cantu be dismissed with prejudice be **GRANTED**;

7. "Defendant Jeffrey Cottrill's Rule 12(b)(6) Motion to Dismiss," ECF No. 28, be **GRANTED IN PART** and **DENIED AS MOOT IN PART** such that:
   a. the request that the claims brought on behalf of L.D. and L.J. against Cottrill be **DENIED AS MOOT**; and
   b. the request that Lance and Journey's claims against Cottrill be dismissed with prejudice be **GRANTED**;

8. "Rule 12(b)(6) Motion to Dismiss Filed by Defendants Mr. Frankie Gray and Dr. Dionel Waters," ECF No. 30, be **GRANTED IN PART** and **DENIED AS MOOT IN PART** such that:
   a. the request that the claims brought on behalf of L.D. and L.J. against Gray and Waters be **DENIED AS MOOT**; and
   b. the request that Lance and Journey's claims against Gray and Waters be dismissed with prejudice be **GRANTED**;

33

9. Defendant "Brett Stidham's Rule 12(b)(6) Motion to Dismiss," ECF No. 32, be **GRANTED IN PART** and **DENIED AS MOOT IN PART** such that:

   a. the request that the claims brought on behalf of L.D. and L.J. against Stidham be **DENIED AS MOOT**; and

   b. the request that Lance and Journey's claims against Stidham be dismissed with prejudice be **GRANTED**; and

10. the claims brought by Lance and Journey against Cantu, Cottrill, Gray, Waters, and Stidham be **DISMISSED WITH PREJUDICE**.

**SIGNED** this 20th day of May, 2026.

**ROBERT F. CASTAÑEDA**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**